Nathan S. Morris (9431)
**CUTT, KENDELL & OLSON**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
Facsimile: (801) 350-0065
nmorris@ckolaw.com

*Attorneys for the Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE ESTATE OF MARK PETERSON, by and through JACOB PETERSON, PERSONAL REPRESENTATIVE,<br><br>　Plaintiff,<br><br>vs<br><br>LABRIE PARTS CORP., LABRIE ENVIRONMENTAL GROUP, LABRIE ENVIRONMENTAL GROUP USA, WYNNCHURCH CAPITAL, L.P., and DOES 1 THROUGH 50.<br><br>　Defendants. | **COMPLAINT AND JURY DEMAND**<br>**(Tier III)**<br><br>Magistrate Judge Daphne A. Oberg<br><br>Case No. 2:22-cv-00584-DAO |

　　Plaintiff, by and through counsel, hereby complains against the Defendants and for cause of action alleges the following:

　　1.　Mark Peterson ("Decedent") at all times relevant lived in Salt Lake County, State of Utah.

　　2.　Decedent's heirs at the time of his death include:

a. Jacob Dee Peterson – Decedent's Son and Personal Representative of the Estate of Mark Peterson and is a resident of the State of Utah;
b. Tyson Peterson – Decedent's Son;
c. Kadee Shannon Goates – Decedent's Daughter;
d. Mandy Elaine Peterson – Decedent's Daughter;
e. Joyce Larsen Peterson – Decedent's Mother;
f. Darwin Peterson – Decedent's Father.

3. Defendant Labrie Parts Corp. is a corporation with principal offices in Quebec, Canada, that regularly causes its products to be sold, leased, and otherwise distributed in Utah, including the Labrie Automizer Right-Hand including the Labrie hydraulically-powered arm and grabber at issue in this lawsuit.

4. Defendant Labrie Environmental Group is a corporation with principal offices in Quebec, Canada, that regularly causes its products to be sold, leased, and otherwise distributed in Utah, including the Labrie Automizer Right-Hand including the Labrie hydraulically-powered arm and grabber at issue in this lawsuit.

5. Labrie Environmental Group USA is a corporation with principal offices in Quebec, Canada, that regularly causes its products to be sold, leased, and otherwise distributed in Utah, including the Labrie Automizer Right-Hand including the Labrie hydraulically-powered arm and grabber at issue in this lawsuit.

6. Defendant Wynnchurch Capital, L.P. is a corporation with principal offices in Rosemont, Illinois, that purchased Labrie Environmental Group and regularly causes its products to be sold, leased, and otherwise distributed in Utah, including the Labrie Automizer Right-Hand including the Labrie hydraulically-powered arm and grabber at issue in this lawsuit.

7. Defendant Does 1 through 50 are persons or entities who's names or identities are not presently known to the Plaintiff, but who may be ascertained through discovery, including

but not limited to other potential manufacturers, sellers and/or retailers of the subject Labrie product(s). To the extent it is later discovered that these Does had any involvement in the defects, negligence, or other claims alleged herein, then Plaintiff will amend the Complaint based on the "discovery rule" or other applicable rules. Does 1 through 50 are entities or individuals likely to have served roles in the supply chain between design, to delivery, and to end user. It is also anticipated that as the known Defendants may make allocations of fault whether arising in negligence or strict liability to non-parties, Plaintiff reserves the right to assert claims against those persons or entities.

8. Collectively, the entities set forth in paragraphs 3 through 7 are referred to herein as ("Labrie" or "Defendants").

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). This is a civil action and involves, exclusive of interest and costs, a sum in excess of $75,000. Every issue of law and fact in this action is wholly between citizens of different states and in which citizens or subjects of a foreign state are additional parties.

10. Venue is appropriate under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this district.

11. This case is brought pursuant to Utah Code Ann. § 78B-3-106 and -107, for the survival of action and wrongful death of Decedent Mark Peterson who was crushed to death while performing maintenance on a Labrie product that was not equipped with a safety prop or other mechanism to keep the arm elevated during routine maintenance on the machine.

## BACKGROUND ALLEGATIONS

12.     Defendants are the manufacturers, sellers and/or distributors of a Labrie Automizer Right-Hand ("Automizer" or "Automizer Right-Hand") which is a straight-frame, side-loading vehicle designed to collect residential and commercial refuse and recycling materials.

13.     The Labrie Automizer Right-Hand, is equipped with a hydraulically-powered automated arm and grabber that raises and lowers commercial and residential plastic containers with recycling materials and green waste ("Labrie Arm").

14.     Labrie also manufactures, sells, and distributes the body of the Automizer Right-Hand, which is composed of the following main components: the hopper (which is an area of the body where refuse is dumped); the packer (a piece of equipment that pushes refuse into the body); the crusher panel (used to crush bulky items); the tailgate (which is raised to enable the discharge of refuse by raising the body and opening the tailgate); and the aforementioned Arm, among other components.

15.     The body of the Labrie Automizer is generally placed onto a Peterbilt chasis for use by businesses.

16.     The LaBrie Automizer Right-Hand and the Labrie Arm (in yellow) are pictured below:



4

17. Labrie also designed and produced an "Operations Manual" and a "Maintenance Manual" for the operation and maintenance of the Automizer, including the body and all component parts.

18. The Automizer contains a "Body Safety Prop" which is to "ensure that heavy body parts will not move inadvertently" and "ensures that an empty body will not lower when you are working underneath it."

19. The Operations manual warns: "Always set the body safety prop when performing maintenance underneath a raised body. Failure to do so may result in severe injury, or even death."

20. The Operations Manual identifies the Body safety prop and warns as follows:



21. The Automizer also contains a "Tailgate Safety Prop" which is "used to support and keep the tailgate open during inspection or maintenance procedures."

22. The Operations Manual instructs that the Tailgate safety prop "shall be set each time the tailgate is open for inspection and maintenance purposes."

23. The Operations Manual identifies the Tailgate safety prop as follows:



Figure 2-5  Pulling the safety prop upward (left) and setting it down (right)

7. Lower the tailgate onto the safety prop using the TAILGATE DOWN switch on the control panel (see *Tailgate Down Switch* on page 71).

24. The Labrie Arm, referenced in paragraphs 12 to 15 above, <u>does not</u> contain a prop bar or safety bar to prevent inadvertent or unsafe movement of the arm during maintenance.

25. As set forth above, the Labrie Operations Manual and Maintenance Manual contain safety instructions about the body prop and the tailgate prop, but do not contain safety information or otherwise address propping up the Labrie Arm while performing maintenance.

26. The Operations Manual and Maintenance Manual contain no instructions relating to the adjustment of the chain on the Labrie Arm.

## FACTUAL ALLEGATIONS

27. On September 9, 2020, Decedent Mark Peterson was performing maintenance on the hydraulic arm of a 2016 Labrie Automizer with serial number AU161175ER at the Salt Lake City Fleet Maintenance facility at 1990 West 500 South, Salt Lake City, Utah.

28. According to the Work Order completed at the time, the 2016 Automizer "arm slams when it is raised up or when it is brought in all the way."

29. Mr. Peterson began working on the Labrie Arm, but there was no bar for the arm to use during maintenance.

30. He raised the Arm past center and began performing the required maintenance to adjust the arm.

31. Without warning, the Labrie Arm collapsed onto Mark Peterson, crushing him between the body of the truck and the arm, resulting in his death.

32. As a direct and proximate result of the incident, Mark Peterson died on September 9, 2020.

33. As a direct and proximate result of the incident, Mark Peterson suffered conscious pain and suffering prior to his death.

34. As a direct and proximate result of the incident, Mark Peterson's heirs have sustained, and will continue to sustain, non-economic damages, including, without limitation, pain and suffering, emotional distress and mental anguish, loss of enjoyment of life, and other non-economic damages as recoverable by law.

35. As a direct and proximate result of the incident, Mark Peterson's heirs have incurred, and will continue to incur, economic damages, including, without limitation, reasonable and necessary funeral expenses, future lost wages, lost earnings capacity, loss of household services, and other economic damages as the evidence may show at trial.

**FIRST CLAIM FOR RELIEF**
**(Strict Product Liability – All Defendants)**

36. Plaintiff incorporates all preceding paragraphs and further alleges the following:

37. Defendants designed, manufactured, installed, sold, promoted, tested, and/or distributed the Labrie Automizer, including the Labrie Arm at issue in this case, through the stream of commerce.

38. Defendants designed, manufactured, installed, sold, promoted, assembled, tested, and/or distributed the Labrie Arm component parts including nuts, bolts, chains, washers and other fasteners that were equipped on the Labrie Arm at issue in this case, through the stream of commerce.

39. As retailers, sellers, distributors and/or wholesalers of the Labrie Arm at issue, Defendants are jointly responsible for the manufacturers' actions and inactions in creating and placing a defective, unreasonably dangerous, and unsafe product it into the stream of commerce.

40. At the time Defendants placed the Labrie Arm into the stream of commerce, the Labrie Arm was defective and unreasonably dangerous, without limitation, as follows:

    a. Defects in the design;

    b. Defects in the manufacture;

    c. Defects in the warnings; and/or

    d. Other defects that may later be revealed during discovery.

41. More specifically, the design of the Labrie Automizer Right-Hand, including the Labrie Arm, was defective and unreasonably dangerous because:

    a. There was no safety bar, safety prop, or safety brace to ensure that the Labrie arm remained elevated while maintenance was being performed;

    b. There were no instructions on how to ensure that the Labrie arm remain elevated while maintenance was being performed;

      c.    There was no fail-safe or back up safety system/mechanism to prevent the Labrie arm from crashing down in the event of known and reasonably anticipated mechanical or human errors;

      d.    The Labrie arm and component parts, including the nuts, bolts, chains, and other parts meant to keep the Labrie arm elevated, were not designed with sufficient quality or strength;

      e.    Labrie's manual contained no information or particulars about maintenance of the Labrie arm; and/or

      f.    Defects and/or failures in the design of the Labrie arm that may later be revealed during discovery.

42.    The manufacture of the Labrie Automizer Right-Hand, including the Labrie Arm, was defective and made it unreasonably dangerous because Defendants:

      a.    Failed to use proper materials in the construction of the Labrie Arm;

      b.    Failed to properly assemble, install, finish, test, or inspect the Labrie Arm before it was placed into the stream of commerce;

      c.    Failed to ensure that all of the nuts were placed and secured in the corresponding holes/inserts for the proper operation of the Labrie Arm;

      d.    Failed to create, maintain and implement policies and procedures to ensure that prior to delivery into the stream of commerce, the Labrie Arm was safe; and/or

      e.    Other defects that may later be revealed during discovery.

43. The warnings accompanying the Labrie Automizer Right-Hand, including the Labrie Arm, were defective and made the product unreasonably dangerous because Defendants:

    a. Failed to properly warn the operator that the nuts should not be removed from the Labrie Arm;

    b. Failed to properly warn the operator that the Arm should be propped or otherwise secured during maintenance;

    c. Failed to warn of situations where the Labrie Arm would not function properly;

    d. Failed to include warnings that would advise the operator or maintenance provider that the hydraulic system was failing or that it would crash down;

    e. Failed to warn the operator or maintenance provider on how the Labrie Arm would function in the event of a hydraulic system failure; and/or

    f. Other defects that may be later revealed during discovery.

44. The defects in the Labrie Arm were a direct and proximate cause of the Decedent's death and pre-death suffering, and the damages sustained by his heirs.

45. Defendants are, therefore, strictly liable for the injuries and damages sustained by Plaintiff.

## SECOND CLAIM FOR RELIEF
### (Negligence – All Defendants)

46. Plaintiff incorporates all preceding paragraphs and further alleges the following:

47. At the time Defendants placed the Labrie Arm into the stream of commerce, they knew or should have known, without limitation, the following:

a. That maintenance and service workers, such as Mark Peterson, would be required to raise the Labrie arm to "fully up position" to work on the arm;

b. That maintenance and service workers, such as Mark Peterson, would be required to adjust the Labrie arm while it was fully elevated;

c. That maintenance and service workers, such as Mark Peterson, would fully rely on the Labrie Arm to function properly;

d. That maintenance and service workers, such as Mark Peterson, could not anticipate that the Labrie Arm would fail while work was being performed or in other conditions;

e. That the Labrie Arm, without the use of a brace or bar to prop it up during maintenance, would be inadequate to prevent injury or death in the event of a system failure or human error;

f. That in the course of maintenance, workers were likely to loosen the nuts attached to the chain of the Arm and that such actions could result in nuts being stripped or completely removed (intentionally or inadvertently) from the Labrie Arm which would cause the Arm to collapse unexpectedly while the worker was underneath the arm as required;

g. That the warning system would not be able to detect the failure of the Labrie Arm;

h. That operators and maintenance providers of the Labrie Arm, including Decedent Mark Peterson, would, in reliance on the representations and competency of the Defendants, and in reliance upon the lack of warnings,

suffer severely increased chances of injury when the Labrie Arm failed, malfunctioned, or otherwise collapsed;

i. That many operators and maintenance providers of refuse trucks equipped with the Labrie Arm would not be aware of the risk of collapse, especially given the lack of adequate warnings.

48. By producing, manufacturing, distributing, and otherwise placing the Labrie Automizer Right-Hand, including the Labrie Arm, into the stream of commerce, and with the aforementioned knowledge of potential harms, Defendants undertook a duty of care to operators and maintenance providers of the Labrie Arm, including Decedent, which they breached, by and among the following:

a. Failing to ensure through policies and procedures, and other accepted industry standards, that the Labrie Arm was constructed, manufactured, and installed with adequate quality checks and controls to ensure that they were safe for use by operators and maintenance providers, such as Decedent;

b. Failing to properly assemble, install, finish, test, inspect the Labrie Arm before it was placed into the stream of commerce;

c. Failing to discover, correct, or repair the dangerous condition on the Labrie Arm;

d. Failing to implement and conduct appropriate/adequate testing to evaluate the propensity of the Labrie Arm to fail;

e. Failing to implement and conduct appropriate/adequate testing to evaluate the safety of the Labrie Arm;

    f.    Failing to provide adequate safety mechanisms such as a safety bar or safety prop/brace for use when the Labrie Arm was fully elevated;

    g.    Failing to warn of the dangers associated with maintaining the Labrie Arm; and/or

    h.    Such other acts of negligence as may be revealed through discovery.

49.    The aforementioned negligence by Defendants directly and proximately caused Decedent's death and pre-death suffering, and the damages sustained by his heirs.

### THIRD CLAIM FOR RELIEF
**(Breach of Express Warranties – All Defendants)**

50.    Plaintiff incorporates all preceding paragraphs and further alleges the following:

51.    Defendants expressly warranted that the Labrie Automizer and Arm was free from defects.

52.    Defendants knew or should have known that the Labrie Automizer and Arm was unreasonably dangerous and defective and likely to cause severe injuries to users.

53.    Defendants breached their express warranties, and this breach of warranty was a proximate cause of Decedent's death and Plaintiff's damages.

### FOURTH CLAIM FOR RELIEF
**(Breach of Implied Warranty of Merchantability – All Defendants)**

54.    Plaintiff incorporates all preceding paragraphs and further alleges the following:

55.    Defendants are merchants with respect to the Labrie Automizer and Arm and implicitly warranted that it was merchantable.

56.    However, the Labrie Automizer and Arm was not merchantable because it contained the defects outlined above.

57. Defendants, therefore, breached the implied warranty of merchantability, and this breach of warranty was a proximate cause of Decedent's death and Plaintiff's damages.

## FIFTH CLAIM FOR RELIEF
**(Breach of Implied Warranty of Fitness for a Particular Purpose – All Defendants)**

58. Plaintiff incorporates all preceding paragraphs and further alleges the following:

59. Defendants had reason to know (A) the particular purpose for which the Labrie Automizer and Arm would be used, and (B) that operators of the Labrie Automizer and Arm, including Decedent Mark Peterson, were relying on Defendants' skill and judgment to provide a suitable product.

60. Defendants implicitly warranted that the Labrie Automizer and Arm was fit for the particular purpose for which it was used by operators and maintenance providers, including Decedent Mark Peterson.

61. However, the Labrie Automizer and Arm was not fit for the particular purpose for which it was used.

62. Defendants, therefore, breached the implied warranty of fitness for a particular purpose, and this breach of warranty was a proximate cause of Plaintiffs' resulting injuries and damages.

## PRAYER

WHEREFORE, Plaintiff prays for a judgment against Defendants in an amount to be determined by the trier of fact for the following damages:

1. For economic damages resulting from Decedent's death in an amount to be alleged and proven at trial;

2. For non-economic damages suffered by Decedent prior to his death;

14

3. For non-economic damages suffered by the Estate and the heirs in an amount to be alleged and proven at trial;

4. For related consequential damages; and

5. For any other further legal and/or equitable relief deemed just and proper by the court, including, without limitation, attorney fees, costs, pre- and post-judgment interest, and any other damages recoverable by law.

DATED this 8th day of September, 2022.

**CUTT KENDELL & OLSON**

*/s/ Nathan S. Morris*

Nathan S. Morris
Attorneys for Plaintiff